The plaintiff, Alexander Anthony Vega, brought this suit against the Higgins Industries, Inc., his employer, and Maryland Casualty Company, its insurer, claiming four hundred weeks compensation at $20 per week, less $30 previously paid him, or $7970 with interest, etc., as workmen's compensation alleged to be due him as a result of an injury sustained in the course of his employment as a marine pipe-fitter, on *Page 662 
August 20, 1943, when he was struck on the head by a "shackling cable." He contends that as a result of said accident he is permanently disabled from performing the duties of his former occupation.
The defendants answered admitting that plaintiff was injured, but averred that all compensation due him has been paid.
There was judgment below in plaintiff's favor in the sum of $8,000, less a credit of $1040, representing $20 per week for fifty-two weeks, the period during which plaintiff was employed by defendant following the accident. From this judgment the defendants have appealed.
Following the accident plaintiff was sent to the Hotel Dieu where he remained for a period of thirteen days, returning to his employment one week later, when he was given very light work. About four weeks thereafter he tried to resume his work as a pipe fitter, but was unable to continue. He was given various other jobs requiring less effort and, from time to time, was put back on the job as a pipe-fitter, but he complained of his head and back aching him and dizzy spells, with the result that he abandoned further effort and, finally, on September 5, 1944, he severed his connection with Higgins altogether. Meanwhile, he had been paid the wages of a pipe-fitter or $1.20 per hour for about one year after the accident. At the time of the trial he was employed as the manager of a restaurant and bar where he earned $40. a week.
Plaintiff contends that he still suffers from vertigo and headaches with occasional vomiting spells and lapse of memory, all of which he attributes to the accident which he suffered on August 20, 1943. He alleges that he is permanently disabled and, therefore, he is entitled to receive four hundred weeks compensation at the rate of $20 per week under Section 8, subd. 1(b), of the Compensation Statute, as amended by Act No. 242 of 1928, p. 357.
The defendants maintain that whatever plaintiff is suffering from now it is not the result of his accident and that having paid plaintiff compensation during the period that he was confined in the hospital they owe him nothing more. They point to Section 18, subd. 4, of the Compensation Act as amended by Act No. 85 of 1926, p. 122 which reads as follows:
"All compensation payments provided for in this act, shall mean and be defined to be for injuries and only such injuries as are proven by competent evidence, of which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself."
In other words, it is the contention of defendants' counsel that there are no objective symptoms of plaintiff's dizziness, headaches and loss of memory, etc., and that, therefore, under this section since all of these symptoms are within the physical or mental control of the plaintiff, there can be no recovery.
[1] Dr. E.H. Maurer testified that there were two objective symptoms of plaintiff's present condition as indicated by his occasional inability to walk with his eyes closed and his arms outstretched, denoting a marked disturbance of equilibrium, and also by an abnormal knee reflexion. However, other doctors failed to agree with Dr. Maurer. Be that as it may, the jurisprudence is to the effect that there need not be a continued exhibition of objective symptoms if the injury complained of may be said to have been connected with the original accident. In the present case, the plaintiff was struck on the head by a large object which produced unconsciousness which lasted for about three hours. There is, therefore, no question of the presence originally of objective symptoms.
We are referred to the case of Aloisio v. Seims-Helmers, Inc., La. App., 161 So. 334, 335, from which the following language is quoted:
"The question then, which confronts us, is this: 'When there has been a serious injury, evidence by objective symptoms, and compensation has for a time been paid, should the courts award further compensation on the unsupported statement of the claimant that he continues to suffer pain, although there is no objective or discoverable pathological reason therefor?' "
We answered this question in the negative.
In the cited case, however, there was no connection proven between the injury complained of and the original accident.
In Brown v. Joseph Rathbone Lumber Company, 11 La. App. 599, 123 So. 383, this Court said:
"The object of this provision of the Compensation. Law (sub-sec. 4 of sec. 18, as amended) is to prevent imposition and fraud, but it is not intended to relieve an employer from the obligation to pay compensation within the limit fixed by the statute *Page 663 
during the disability caused by the injury to the disabled workman, whether the objective symptoms have disappeared or not. It is only necessary that there should have been 'objective conditions or symptoms proven,' and such subjective result as may be imputed to the original objective condition is compensable under the law."
In the case of Frantz v. Schroeder, 184 La. 945, 168 So. 110, decided in March, 1936, the Supreme Court in overruling this Court referred to the foregoing language from Brown v. Joseph Rathbone Lumber Company, with approval, but held that we were wrong in denying recovery to a plaintiff who claimed to be suffering with a sacroiliac strain which the two medical experts who testified in the case declared exhibited no objective symptoms as appears by the following excerpt from our opinion in the Frantz case, 164 So. 147, 148:
"Dr. Hatch, like Dr. Maurer declared that plaintiff exhibited no objective symptoms of injury, and, like Dr. Maurer, his diagnosis of Frantz's disability was based entirely upon what Frantz told him concerning his pain and suffering."
The Supreme Court in the Frantz case [184 La. 945, 168 So. 111] allowed a plaintiff to recover though two medical experts (there was no other expert testimony) testified that there never had been any Objective symptoms, saying that the evidence showed a "barrel of molasses suddenly fell against him and brought him down on his knees, causing him severe pains and weakness about his back to such an extent that he was forced to immediately discontinue his work and call his employer, who, within a half hour, replaced plaintiff and took him in his own car to Dr. Geismer for treatment. This testimony was uncontradicted by the defendant. It is our opinion that it sufficiently establishes the occurrence of an accident and resulting injuries for which the statute allows compensation."
Here the injured workman exhibited objective symptoms following the accident, consequently the question is whether his present condition may be said to be caused by his injury.
We turn, therefore, to the testimony of the medical experts to determine this question.
Drs. H. Randolph Unsworth and C.P. May, psychiatrists, and Dr. E.H. Maurer, an orthopedic specialist, all expressed the opinion that the plaintiff was suffering from post-traumatic cerebral syndrome or post-traumatic neurosis and definitely connected his condition with the accident.
The defendant offered Dr. M.M. Greenberg, a general practitioner, who at the time, was employed by Higgins Industries, Inc., Dr. Gilbert Anderson, a neuro surgeon and Dr. J. Henry Larose, Ear, Eye, Nose and Throat Specialist. Dr. Greenberg testified that he believed plaintiff had recovered and released him for work one week after he left the hospital, though he admitted that plaintiff continued to visit him very frequently during the entire year following the accident when he was attempting to work at Higgins, complaining of headaches, backache, dizziness and lapse of memory.
Dr. Anderson testified that he examined plaintiff on July 24, 1944, or eleven months after the accident and that he was of the opinion that "he should go on to a complete recovery" and that he was able to return to work. Dr. Anderson also stated that "he did complain to me of headache and vertigo and things of that nature, such as he has mentioned here. But I did not see any evidence of those things."
Dr. Larose examined the plaintiff for the Maryland Casualty Company and concluded that he was suffering from "hyperopic astigmatism," which would cause headaches and dizziness unless he was properly fitted with glasses, but he was, however, unable to say whether the plaintiff was wearing the correct glasses at the time. Dr. Larose was of the opinion that there was definitely no connection between the astigmatism and the accident. In his report to the insurance company, Dr. Larose failed to mention that he had discovered an astigmatism in plaintiff's eyes and stated that he could not explain why he had neglected to mention this important fact.
[2] On the whole we believe the medical testimony clearly preponderates in favor of the plaintiff's contention that his present physical condition is due to his accident and, therefore, we are of the opinion that he should recover.
[3, 4] Plaintiff sues for four hundred weeks compensation under Section 8, subd. 1(b), of the compensation law which provides for recovery as in case of permanent disability. There is no doubt that the plaintiff is unable to perform the duties of a marine pipe-fitter and he is, therefore, *Page 664 
entitled to recover under this section of the statute. Ranatza v. Higgins Industries, Inc., La. App., 18 So.2d 202. He was employed by Higgins subsequent to the accident for a period of fifty-two weeks, during which time he received full wages, though the evidence indicates that he did practically nothing to justify the payment of wages. Therefore, to the extent of $20 per week, it must be considered that the payment made to him constituted compensation. To the extent by which these payments exceeded $20, the payment must be considered as a gratuity.
Defendants' counsel say that credit was not allowed for two weeks compensation paid plaintiff. The evidence is to the effect that only $30, acknowledged by plaintiff to have been received, was paid, which would cover one and one-half weeks at the rate of $20 per week, a fact which was apparently overlooked by the trial judge. This additional amount, therefore, must be credited since the lower court overlooked it, consequently, and
For the reasons assigned the judgment appealed from is amended so as to read as follows:
It is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Alexander Anthony Vega, and against defendants, Higgins Industries, Inc., and Maryland Casualty Company, jointly and in solido, in the sum of Twenty Dollars ($20) per week, for a period not exceeding four hundred weeks, beginning August 27, 1943, subject to a credit of fifty-three and one-half weeks or a total of $1070. Defendant to pay all costs.
Amended and affirmed.