680 So.2d 1364 (1996)
John A. ELSWICK
v.
HIGHWAY TRANSPORT.
No. 96 CA 0014.
Court of Appeal of Louisiana, First Circuit.
September 27, 1996.
*1365 R. Michael Caldwell, Baton Rouge, for Plaintiff-Appellee.
Kenneth W. Benson, Jr., Baton Rouge, for Defendant-Appellant.
Before LOTTINGER, C.J., and FOIL and FOGG, JJ.
FOGG, Judge.
Defendants, Highway Transport and its insurer, Liberty Mutual Insurance Company, appeal a judgment of the Office of Workers' Compensation in favor of claimant, John A. Elswick, awarding him workers' compensation *1366 benefits, penalties and attorney's fees, and medical expenses. We affirm.
At the time of his injury, John Elswick was employed by Highway Transport as a truck driver. Although Elswick lived in the Baton Rouge area and worked out of Reserve, Louisiana, his job took him to many parts of the country. On May 18, 1994, while in Chicago, Illinois, he was required to drop off one trailer and pick up another. While attempting to hook the trailer to his tractor unit, it was necessary for him to pull on a "fifth wheel pin" which would allow the tractor to attach to the trailer that was going to be towed. Elswick pulled on the pin expecting it to come out easily; however, it surprised him, and became frozen. He was required to use some tools to loosen the fifth wheel pin so that he could pull it out.
Elswick did not notice any immediate physical problems and continued his journey to Mount Vernon, Illinois, where he spent the night. When he awoke the next morning, approximately seventeen to eighteen hours after he had attempted to pull the fifth wheel pin, he had a persistent pain between his shoulder blades. On May 20, 1994, he completed his route by delivering his load to Ennis, Texas, and then reported to the Highway Transport terminal in LaPorte, Texas.
Upon his arrival in LaPorte, Texas, Elswick informed the dispatcher that he was experiencing pain between his shoulder blades. He requested a return trip to Reserve, Louisiana, so he could seek medical care close to home. The dispatcher informed him that there was no load going to Baton Rouge for two days and he would have to wait.
Elswick then checked into a motel, cleaned-up, and went to the emergency room in Baytown, Texas, where he was diagnosed with musculoskeletal pain. Due to continuing pain, he returned to the same emergency room two days later. At that time, he was diagnosed with cervical radiculopathy.
On May 22, 1994, Elswick left Texas for the return trip to Reserve, Louisiana. Upon his return home, he saw Dr. William F. Hagemann, who referred him to Dr. Steven Bailey, a neurosurgeon. Dr. Bailey diagnosed a ruptured disc. On July 5, 1994, Elswick underwent surgery for the removal of a free fragment disc at the C7-T1 level. His recovery was uneventful and he returned to work full time for Highway Transport in December of 1994.
Elswick was not sure what caused his pain on May 19, 1994; however, he was of the opinion that it had something to do with his job as a truck driver. Highway Transport and Liberty Mutual denied compensation benefits and medical expenses on the grounds that Elswick did not sustain an "accident" in connection with his work.
The administrative hearing officer ruled in favor of Elswick and ordered the defendants to pay temporary total disability benefits from May 22, 1994 through December 21, 1994, penalties of $2,000.00 and attorney's fees of $4,000.00, and costs associated with one of the depositions. The defendants appeal all portions of the judgment, except the costs associated with the depositions. Elswick answered this appeal, contending he is entitled to an increase in the attorney's fees awarded by the hearing officer and an award of additional attorney's fees on appeal.
Initially, the appellants assign as error the hearing officer's finding that Elswick carried his burden of proving that he sustained a work-related "accident" within the meaning of LSA-R.S. 23:1021(1).
In order to be compensable under the workers' compensation statutes, an injury must have resulted from an "accident arising out of and in the course of [an employee's] employment." LSA-R.S. 23:1031. An accident is defined in LSA-R.S. 23:1021(1) as follows:
"Accident" means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
The appellants contend there was no accident due to what they claim was "the complete and utter failure of the claimant to report the accident despite numerous opportunities *1367 to do so with both his employer and health care providers prior to the completion of the Form 1008, which occurred slightly more than a month after the claimant underwent surgery for a herniated disc." The appellants also assert that the only evidence offered in support of the claimant's contention that he was injured while pulling out the fifth wheel pin was his "self-serving" testimony. Finally, they assert that Elswick first described a completely different accident that he was injured "driving, hit hard bumps"and that he should not have the opportunity to change his description of his accident until it finally conforms to a scenario allowing recovery.
In the instant case, Elswick visited the emergency room twice while in Baytown, Texas, while he was awaiting a truck to transport him back to Louisiana. During each of those visits, he told the emergency room personnel that the pain was sudden, beginning only one or two days before his visits. At that time, he did not inform any of the medical personnel that he was involved in an accident.
Upon his return home, Elswick saw Dr. Hagemann, an orthopedic surgeon. Based on Dr. Hagemann's deposition testimony, the appellants attempt to make an issue of the length of time Elswick was suffering from back pain. Dr. Hagemann testified that Elswick told him he had been suffering for several weeks prior to his visit. We do not find this testimony persuasive because Elswick completed a patient questionnaire form prior to seeing Dr. Hagemann, on which he stated that the onset of his injury was just five days before.
On June 9, 1994, Elswick was next seen by Dr. Bailey, who testified that Elswick told him he had the pain for approximately one month. Again, the appellants attempt to show that this conflict indicates that the injury did not take place on May 18, 1994 when Elswick testified that he pulled the fifth wheel pin. We disagree. By the time Elswick saw Dr. Bailey, more than three weeks had passed between the date of pulling the pin and his visit with the doctor. Certainly one could conclude that was "approximately" one month prior. Further, Dr. Bailey also testified that Elswick told him he went to the emergency room shortly after the on-set of the pain. This testimony corresponds to the testimony of Elswick.
During surgery, Dr. Bailey found a free fragment disc, a portion of disc material which had broken off and entered the area where the nerve travels. Dr. Bailey stated that a free fragment disc is not a degenerative condition, that it is common to see the passage of a day or two before the onset of pain and numbness, and that it could be caused be a sneeze or a cough. When the claimant's attorney described Elswick's attempt to remove the fifth wheel pin, Dr. Bailey stated that such movement would be consistent with Elswick's injury. Accordingly, we find that the incident with the fifth wheel pin described by Elswick fits the definition of an accident and is compensable by workers' compensation.
The appellants assert that Elswick's delay in reporting the fifth wheel incident and his failure to immediately claim a workers' compensation claim should be a bar to his later claims.
An employee is entitled to workers' compensation benefits if he receives a personal injury by accident "arising out of and in the course of his employment." LSA-R.S. 23:1031A. The employee has the burden of proving, by a preponderance of evidence, that his disability is related to an on-the-job injury. Walton v. Normandy Village Homes Ass'n, Inc., 475 So.2d 320 (La.1985). Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. Brown v. Blue Grass Liquor Co., 25-552 (La.App. 2 Cir. 2/23/94), 632 So.2d 904. In order for the employee to recover, he must show that his employment somehow caused or contributed to the disability, but he need not establish the exact cause. Andrews v. Music Mountain Water Co., 25-634 (La.App. 2 Cir. 4/6/94), 637 So.2d 571, writ denied, 94-1190 (La.6/24/94), 640 So.2d 1356. A claimant's own testimony may be sufficient to prove causation by a preponderance of evidence, provided (1) no other evidence discredits or *1368 casts serious doubt upon the claimant's version of the incident, and (2) the claimant's testimony is corroborated by circumstances surrounding the alleged incident. Bruno v. Harbert Int'l Inc., 593 So.2d 357 (La.1992).
The fact that Elswick did not officially notify his employer that he suffered a work-related injury until several weeks after the injury does not prohibit a finding that he suffered an accident. Elswick explained that it was only after he had the surgery to relieve his pain that he was able to reconstruct the events of the days immediately preceding the onset of his pain. Clearly there are cases, such as this one, where the pain is not immediate, but delayed by several hours or even days, and the claimant cannot be sure at that particular moment what exactly precipitated the painful event. However, medical intervention and clarity of thought can place the blame on an earlier event that seemed innocuous at the time, but was, in fact, the incident that was the cause of the medical problem. In Mackie v. Crown Zellerbach Corp., 444 So.2d 166, 171 (La.App. 1 Cir.1983), this court stated, "We will simply add that the potential worker's compensation claimant should not be barred from recovery because he does not realize or diagnose the full extent of his injury immediately after its occurrence." See also Stevens v. Wal-Mart Stores, Inc., 27-977 (La.App. 2 Cir. 11/1/95), 663 So.2d 543; Guilbeaux v. Martin Mills, Inc., 93-1359 (La.App. 3 Cir. 5/4/94), 640 So.2d 472, writ denied, 94-1444 (La.9/23/94), 642 So.2d 1291.
The record clearly indicates that the onset of Elswick's medical problems was sudden. He was on the road and far from home at the time, all within the course and scope of his employment. The appellants can point to no intervening cause for the problem. We find that Elswick's delay in determining the event that triggered his free fragment disc was not detrimental to his claim for workers' compensation benefits.
In their second assignment of error, the appellants claim that the hearing officer erred in awarding penalties and attorney's fees to the claimant. LSA-R.S. 23:1201 and 23:1201.2, which govern the award of penalties and attorney's fees in workers' compensation cases, were amended by Acts 1995, No. 1137, effective June 29, 1995. Prior to the 1995 amendment, LSA-R.S. 23:1201E provided that penalties were not to be assessed when the employee's right to receive workers' compensation benefits had been reasonably controverted by the employer or insurer. LSA-R.S. 23:1201E. LSA-R.S. 23:1201.2 provided that there must be a finding that the defendant acted arbitrarily and capriciously and without probable cause before attorney's fees could be assessed.
The 1995 amendment changed the section heading of LSA-R.S. 23:1201 to read "Time and place of payment; failure to pay timely; failure to authorize; penalties and attorney fees." It redesignated Subsection E as Subsection F and rewrote redesignated Subsection F to read, in pertinent part, as follows:
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:
(1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers' compensation insurance policy shall provide that these sums shall be paid by the insurer if the hearing officer determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
Under the 1995 amendment, the assessment of attorney's fees is improper if the claim is reasonably controverted. Prior to the amendment attorney's fees were awarded *1369 upon a finding that the defendant acted arbitrarily and capriciously in its failure to pay benefits. In order to determine which standard applies herein, we must first determine whether the amendment is to be applied retroactively or prospectively.
LSA-C.C. art. 6 and LSA-R.S. 1:2 require that we engage in a two-fold inquiry when making this determination. First, we must ascertain whether in the enactment the legislature expressed its intent regarding retrospective or prospective application. If the legislature did not, we must classify the enactment as substantive, procedural or interpretive. See Cole v. Celotex Corp., 599 So.2d 1058 (La.1992).
In the instant case, the legislature did not express an intention regarding the retrospective or prospective application of this legislation. Therefore, we turn to the task of classifying the amendment as substantive, procedural or interpretive.
Substantive laws are laws that impose new duties, obligations or responsibilities upon parties, or laws that establish new rules, rights and duties or change existing ones. St. Paul Fire & Marine Insurance Co. v. Smith, 609 So.2d 809 (La.1992). Procedural laws address the methods for enforcing an existing right or relate to how a law operates. Segura v. Frank, 93-1271, 93-1401 (La.1/14/94), 630 So.2d 714, cert. denied, ___ U.S. ___, 114 S.Ct. 2165, 128 L.Ed.2d 887. Interpretive laws are those which clarify the meaning of a statute and are deemed to relate back to the time that the law was originally enacted. Manuel v. Louisiana Sheriff's Risk Management Fund, 95-0406 (La.11/27/95), 664 So.2d 81.
Clearly, the amendment is not interpretive legislation. The amendment changes the standard by which we determine the right of an employee to recover attorney's fees for non-payment of benefits. This is a substantive change in the workers' compensation statute. Laws that are substantive in nature are to be applied prospectively. Graham v. Sequoya Corp., 478 So.2d 1223 (La. 1985).
Accordingly, at all times pertinent hereto, LSA-R.S. 23:1201E provided for the imposition of a 12% penalty on compensation benefits when the employer or insurer fails to pay timely; penalties, however, are not to be assessed when the employee's right to such benefits has been reasonably controverted by the employer or insurer. Furthermore, LSA-R.S. 23:1201.2 provided, in pertinent part, there must be a finding that the defendant acted arbitrarily and capriciously and without probable cause before attorney's fees can be assessed. Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277 (La.1993).
The appellants assert that they had a reasonable basis for their decision to deny Elswick workers' compensation benefits. First, they claim Elswick's failure to report any accident to his employer provided them with a reasonable basis to deny his claim. However, we note that as soon as Elswick returned to Texas he informed his dispatcher that he was in pain and was going to an emergency room. He completed an Employers' First Report of Injury form prior to his surgery and he gave a statement to an adjuster employed by Liberty Mutual. Second, appellants assert that Elswick filed claims on the injury with his group health insurer rather than seeking payment through workers' compensation. Elswick testified that he told the Safety Director in Knoxville, Tennessee that he thought he had been injured on the job and wanted to make a workers' compensation claim. Elswick stated that the Safety Director said, "[J]ust go ahead and leave it on [your] hospitalization to see how it [comes] out." Further, several of the patient questionnaires filled out by Elswick had a space to indicate whether or not he had suffered a workers' compensation injury. In several of those spaces, he placed a question mark; he left others blank.
Finally, the appellants contend that it was most significant that Elswick's first discovery of what had actually caused his injury came more than seven weeks after the alleged accident, and then only after he had undergone surgery. As discussed earlier, Elswick adequately explained this delay.
The hearing officer found it significant that no testimony was offered from the adjuster from Liberty Mutual or anyone else who was *1370 in communication with Elswick during the period when he was attempting to report his injury and define what may have happened to him. The appellants contend that there was nothing for an adjuster to add to the fact that Elswick admitted that he did not report any work-related accident to his dispatcher at the LaPorte, Texas terminal; and it was immaterial that no adjuster testified as to why benefits were denied. We disagree. The appellants failed to provide any evidence of their investigation; therefore, there was nothing for the hearing officer to consider and nothing in the record for this court to review. Considering the record as a whole, it is clear that the appellants were on notice that Elswick was of the opinion that he had suffered an on-the-job injury. They have provided this court with no evidence of their investigatory reasons for denying his claim.
Whether an insurer's conduct justifies an award of penalties and attorney's fees is a factual question on which we will not disturb the trial court's finding absent manifest error. Cooper v. AMI, Inc., 454 So.2d 156 (La.App. 1 Cir.1984), writ denied, 459 So.2d 539 (La.1984). After reviewing the entire record in this matter, we find that the hearing officer's award of penalties and attorney's fees as set forth in LSA-R.S. 23:1201E and LSA-R.S. 23:1201.2 is not manifestly erroneous.
Likewise, we do not find that the hearing officer was manifestly erroneous in the amount of attorney's fees awarded and reject Elswick's request that we increase the hearing officer's award of attorney's fees. The hearing officer clearly read all of the depositions and pleadings and heard all of the testimony; therefore, she knew how much work was done by the claimant's counsel prior to the award of attorney's fees. The fee schedule she set was reasonable. However, an increase in attorney's fees is awarded on appeal when the defendant appeals, obtains no relief and the appeal necessitated more work on the part of the claimant's attorney, provided that the claimant requests such an increase. Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736 (La. App. 1 Cir.), writ denied, 553 So.2d 466 (La.1989). In this case, a review of the additional work necessitated this appeal reveals that an award of $1,500.00 in attorney's fees is warranted.
For the foregoing reasons, the judgment of the Office of Workers' Compensation is affirmed. Costs are assessed against the appellants.
AFFIRMED.